James E. **ANGLIN**, Jr., Appellant,

v.

Togo D. **WEST**, Jr., Secretary of Veterans Affairs, Appellee.

No. 96–704.

United States Court of Veterans Appeals.

Aug. 11, 1998.

William T. Bogue, Ventura, CA, was on brief for appellant.

Robert E. Coy, Acting General Counsel; Ron Garvin, Assistant General Counsel; Joan E. Moriarity, Deputy Assistant General Counsel; and Darryl A. Joe, Washington, DC, were on brief for appellee.

Before KRAMER, FARLEY, and GREENE, Judges.

GREENE, Judge:

Veteran James E. Anglin appeals a May 24, 1996, Board of Veterans' Appeals (Board) decision finding that new and material evidence sufficient to reopen claims for service connection for post-traumatic stress disorder (PTSD) and a back disorder had not been presented. He also appeals the Board's decision that claims for a bladder dysfunction and a neurological hand condition were not well grounded. The Board decision also remanded an issue relating to the appellant's claim for an increased rating for a hip disorder. Although the appellant argues this issue in his brief, the Court does not have jurisdiction to consider it absent a final Board decision. See 38 U.S.C. §§ 7252(a), 7261(d), 7266(a)(1). The Secretary has filed a brief seeking affirmance of the Board's decision. The appellant urges the Court to reverse the Board's findings. The Court has jurisdiction of the case under 38 U.S.C. § 7252(a). For the reasons that follow, the Court will affirm in part and vacate in part the Board's decision and remand two matters.

## I. FACTS

The appellant served on active duty in the U.S. Navy from July 3 to August 8, 1986. Record (R.) at 19. His enlistment medical examination did not note any disorder rele-

vant to this appeal. R. at 28–29, 45. On July 11, 1986, the appellant was treated for complaints of low back injuries and hip pains resulting from his stepping into a trench while marching. R. at 32. He was diagnosed as having low back strain and mild left hip flexor muscle strain. *Id.* After several days of modified duty, he was returned to full duty. R. at 32–34.

On July 30, 1986, the appellant was referred to the Recruit Evaluation Unit for command counseling for "personal problems and stress." R. at 35. The psychologist's mental status evaluation noted that Anglin was:

> [R]emarkable for anxiety, dysphoria ..., suicidal threats [stating] "unless I get out of here I'm coming apart, something's wrong with me." No evidence of psychosis. He has agreed that he will report ASAP to MHU [mental health unit] if he believes he is at risk of harming himself.... He reports being physically abused by his father (Ret. USN). He says[,] "I felt guilty about not doing better." He describes a pattern of immature [and] dependant behavior typified by living [with] his wife of one year at his parents['] home. He has had a variety of jobs [and] thought the navy would offer him security.... He says that he has been drinking approximately 1 pint of hard liquor per day for "some time." He is quite worried when questioned about ETOH [ethyl alcohol] use. He reported "trying to stop drinking at 19 yrs." old—but was unsuccessful.
>
> It is likely that [ ] Anglin's current psychological condition may deteriorate if he returned. It's my opinion that he is unsuitable for naval service.

R. at 35–36. As a result, the appellant was evaluated as possessing an adjustment disorder with mixed disturbance of emotions and conduct, an immature and dependent mixed personality disorder, and defective military attitude. *Id.*

After falling again, the next day the appellant sought treatment for pain in his left hip. R. at 37. The treating physician opined that the appellant "could remain in service until this [hip pain] resolves; however, he desires

separation from the service. We recommend he be separated for his other problems, not related." R. at 39. The physician further noted that "his snapping l[eft] hip will resolve spontaneously [and] not require further treatment." *Id.* On August 4, 1986, the appellant was examined again for his hip, and x-rays depicted a "slipped cap[ital] epiphysis," characterized as "mild" and "old." R. at 41. The capital epiphysis is the articular end at the head of a long bone. DORLAND'S ILLUS-TRATED MEDICAL DICTIONARY 568 (28th ed.1994) [hereinafter DORLAND'S]. On August 8, 1986, he received an uncharacterized entry-level separation from service. R. at 47.

On August 12, 1986, the appellant filed a claim for service connection for his left hip injury and a nervous condition. R. at 22–25. An October orthopedic examination diagnosed him as having "[u]ndiagnosed hip pathology, with weakness and instability of the left hip." R. at 56. On November 6, 1986, he had surgery performed on his left hip at the San Diego VA Medical Center. R. at 50, 119–20.

During an October 1986 VA psychiatric evaluation, the appellant alleged that on July 24, 1986, he was beaten and anally raped while at a naval hospital. R. at 57. He stated that he had informed his wife of this incident on August 8, 1986, and told a physician about the incident two weeks later. *Id.* He was diagnosed with acute PTSD. R. at 59; *see also* R. at 65, 83. The psychiatrist identified the appellant's claimed rape as the stressor causing the PTSD. R. at 59. Medical records from August through October 1986 show the appellant's participation in two therapy groups: "Victims of Violent Crime" and "Coping with Anger." R. at 87–96.

A July 1987 rating decision denied service connection for PTSD because of the absence of credible supporting evidence of a claimed stressor. R. at 100–03. The rating decision also denied service connection for a hip disorder because an examination, including an arthrogram and x-rays, was negative for any permanent left hip disorder. *Id.* The appellant disagreed and submitted duplicates of his medical records and his personal state-

ments asserting that he was entitled to benefits. R. at 109–79.

An October 1988 private medical examination of the appellant, performed at the request of VA, reported the following observations: (1) no bowel or bladder symptoms, (2) persistent left hip arthralgia, (3) "[l]umbar radicular syndrome left, with CAT scan evidence of small L5–S1 disc left," and (4) a lipoma of the thoraco-lumbar spine, which did "not appear to be connected with [h]is military service." R. at 181–84. A lipoma is a benign tumor composed of fatty tissue. DORLAND'S 949. In June 1988, the appellant was examined for complaints of urinary hesitancy. The physician opined that the condition "may be mild neurogenic bladder but certainly nothing severe." R. at 191. A VA examination completed in December 1988 again diagnosed the appellant as having "PTSD, post assault and homosexual rape." R. at 209–12. The report reiterated the appellant's account of the events leading to the claimed assault and rape.

In January 1989, the RO (1) granted the appellant service connection for his left hip, (2) denied service connection for PTSD because of the lack of objective evidence in the record to support the alleged rape incident, and (3) denied service connection for a back disorder because the Board considered his low back condition "acute and transitory in service with no evidence of a chronic back injury in service." R. at 268–73. He subsequently submitted further statements disagreeing with the decision and additional, including duplicate, medical documents. R. at 275–317. The RO characterized this submission as a Notice of Disagreement (NOD) and prepared a Statement of the Case (SOC). R. at 319–29. In March 1989, the appellant offered a statement explaining why he believed that he could not earlier report the rape to the doctors or law enforcement authorities because he was emotionally upset and did not trust anyone. R. at 331–44. Instead, he reported that his wife had been raped. *Id.* A December 1989 Board decision again denied service connection for a back disorder and for PTSD. R. at 350–56.

Mr. Anglin's VA treatment records from May through September 1992 report diagnoses of an atonic bladder (R. at 397), "lipoma of thoracic back" and "hip injury" (R. at 407), numbness in both hands (R. at 395), and left leg weakness and sensory decrease (R. at 408). An atonic bladder is one that lacks normal tone and strength. DORLAND'S 156. An April 1992 magnetic resonance image (MRI) indicated a probable thoracic lipoma. R. at 384. A June 1992 MRI depicted L5–S1 nucleus pulposus. R. at 385. In addition, a June 1992 electromyogram was normal for the lower left extremity and the lumbosacral and thoracic paraspinal muscles. R. at 393. The lipoma was found to "not cause mass effect, and ... no compression of the spinal cord or effacement of the thecal sac." R. at 413. Subsequent MRIs taken in July 1992 and January 1993 were normal. R. at 382–83. During an October 1993 VA compensation and pension examination, the examining physician noted that the appellant stated that he sustained his back and hip injuries in service and developed his urinary disorder shortly after this injury. R. at 442–53. However, the physician recorded that the specific causes of the appellant's ailments were undetermined. *Id.*

In December 1993, the RO determined that the evidence of record was insufficient to (1) reopen claims for PTSD and a back injury, (2) increase the rating for the appellant's left hip disorder, or (3) grant service connection for a bladder dysfunction and a neurological hand condition. R. at 455. The appellant filed an NOD (R. at 462), and the RO issued an SOC (R. at 475–481). In a reply to a congressional inquiry concerning the appellant, Dr. William E. Baumzweiger, a VA neurologist, reviewed the appellant's file and suggested a connection between the lipoma and the bladder condition. R. at 468–69.

During the appellant's hearing before the Board in August 1995, his testimony was consistent with his earlier statements. R. at 495–529. However, he related that he had been told by doctors (1) that his back problem was related to service (R. at 504), (2) that his back problem was the result of a traumatic injury (R. at 506), and (3) that his lipoma was related to trauma in service (R. at 508). On May 24, 1996, the Board found that the evidence was insufficient to reopen

claims for service connection for PTSD and a back disorder and that claims for a bladder dysfunction and a neurological hand condition were not well grounded. The Board remanded the claim for an increased rating for the appellant's left hip. This appeal followed.

## II. APPLICABLE LAW AND ANALYSIS

### A. Neurologic Hand Condition

A person filing a claim for VA benefits has "the burden of submitting evidence sufficient to justify a belief by a fair and impartial individual that the claim is well grounded." 38 U.S.C. § 5107(a); *see Carbino v. Gober,* 10 Vet.App. 507, 509 (1997). The Court has held that to meet this burden, a claim must be accompanied by supportive evidence and that such evidence "must 'justify a belief by a fair and impartial individual' that the claim is plausible." *Tirpak v. Derwinski,* 2 Vet.App. 609, 611 (1992) (quoting 38 U.S.C. § 5107(a)). A well-grounded claim generally requires (1) medical evidence of a current disability; (2) medical or, in certain circumstances, lay evidence of incurrence or aggravation of a disease or injury in service; and (3) medical evidence of a nexus between an in-service injury or disease and the current disability. *See Caluza v. Brown,* 7 Vet. App. 498, 506 (1995), *aff'd per curiam,* 78 F.3d 604 (Fed.Cir.1996) (table); *see also Epps v. Gober,* 126 F.3d 1464, 1468 (Fed.Cir. 1997). Whether evidence is new and material is a determination that this Court reviews de novo under 38 U.S.C. § 7261(a)(1). *See Robinette v. Brown,* 8 Vet.App. 69, 74 (1995) (citing *Grottveit v. Brown,* 5 Vet.App. 91, 92 (1993)).

A service-connection claim must be supported by evidence of a nexus between the claimed in-service disease or injury and the present disease or injury. *See Caluza, supra.* Where the determinative issue involves medical causation, competent medical evidence is required for the claim to be well grounded. *See Grivois v. Brown,* 6 Vet.App. 136 (1994). This burden may not be met by presenting lay testimony. Lay persons are not competent to offer medical opinions. *See*

*Ruiz v. Gober,* 10 Vet.App. 352, 356 (1997); *Grivois, supra.*

In this case, the appellant's evidence is insufficient to well ground his claim for a neurologic hand condition. There is no evidence in the record of any current neurologic hand condition or of any treatment for a hand condition in service. In short, the Court holds upon de novo review that the claim is not well grounded. Therefore, the Board did not err in finding that the claim for a neurologic hand condition was not well grounded.

### B. Back Disorder and Duty to Notify

Section 5103(a), title 38, U.S. Code, provides that if a claimant's application for benefits is incomplete, "the Secretary shall notify the claimant of the evidence necessary to complete the application." 38 U.S.C § 5103(a); *see Robinette,* 8 Vet.App. at 77. In *Robinette,* a "veteran's statement of what his physician told him put the Secretary on notice of the likely existence of competent medical evidence that would, if true, be relevant to, indeed necessary for, a full and fair adjudication of the claim." *Id.* The Court remanded the record to enable the Secretary to fulfill this section 5103(a) duty to notify or inform an appellant of potentially probative evidence. "This analysis in *Robinette* applies equally when new and material evidence is needed to complete an application." *Graves v. Brown,* 8 Vet.App. 522, 525 (1996). Here, the appellant testified that he was told by doctors that his back condition was related to trauma in service. R. at 504, 506, 508. Once aware of this statement, the Secretary had a duty under section 5103(a) to advise the appellant that such physicians' statements were needed to "complete his application." *See Graves* and *Robinette,* both *supra.* This duty was not met. Accordingly, remand is necessary to allow the Secretary to fulfill this section 5103(a) duty. *See Meyer v. Brown,* 9 Vet.App. 425, 430, 434 (1996) (as to remedy for section 5103(a) violation).

### C. Bladder Disorder

The Board determined that the appellant had failed to submit a well-grounded claim for a bladder disorder. (*See* discussion su-

*pra* Part II.A. for what constitutes a well-grounded claim.) Although the appellant has a current diagnosis of a bladder condition, the record lacks medical evidence of any in-service treatment for a bladder disorder. He simply claims that the condition began in service. However, Dr. Baumzweiger's medical opinion connects his bladder condition to the lipoma in his back. R. at 468–69. Because the Court will remand the matter of the back claim, it would be premature to rule on the well groundedness of this claimed bladder condition. On remand, the Board may find the evidence sufficient to reopen the back claim, and then develop or determine any connection or relationship between the appellant's back problem and his bladder condition. Therefore, the claimed bladder disorder, inextricably intertwined with the claimed back condition, is also remanded to the Board. *See Harris v. Derwinski,* 1 Vet. App. 180, 183 (1991).

### D. PTSD Claim

■ The Secretary must reopen a previously and finally disallowed claim if "new and material" evidence is presented with respect to that claim. *See* 38 U.S.C. §§ 5108, 7105(c); *Barnett v. Brown,* 83 F.3d 1380, 1383–84 (Fed.Cir.1996). When considering claims to reopen, the Board must conduct a two-step analysis. *Manio v. Derwinski,* 1 Vet.App. 140, 145 (1991). First, it must determine whether the evidence presented is "new and material." Second, if it is new and material, the Board must then review the evidence in the context of all other evidence of record and determine on the merits whether to alter the prior disposition. "New" evidence is evidence that is not previously of record and that is not "merely cumulative" of other evidence in the record. *See Evans v. Brown,* 9 Vet.App. 273, 283 (1996); *Colvin v. Derwinski,* 1 Vet.App. 171, 174 (1991). "Material" evidence is that which is probative of the issue at hand (i.e., it must tend to prove the merits of the claim as to each essential element that was a specified basis for that last final disallowance of the claim). If the newly presented evidence is probative of the issue at hand, then it is material if a reasonable possibility exists, considering all the evidence, both new and old, that the outcome of the case would be

changed. *See Evans, supra.* In determining whether evidence is new and material, the credibility of newly presented evidence is generally presumed. *See Justus v. Principi,* 3 Vet.App. 510, 513 (1992). Whether evidence is new and material is a determination that this Court reviews de novo under 38 U.S.C. § 7261(a)(1). *See Struck v. Brown,* 9 Vet.App. 145, 151 (1996); *Masors v. Derwinski,* 2 Vet.App. 181, 185 (1992); *Jones (McArthur) v. Derwinski,* 1 Vet.App. 210, 213 (1991).

■ Service connection for PTSD requires the presence of three elements: (1) a current, clear diagnosis of PTSD, (2) credible supporting evidence that the claimed in-service stressor actually occurred, and (3) medical evidence of a causal nexus between the current symptomatology and the claimed in-service stressor. *See Cohen v. Brown,* 10 Vet.App. 128, 138 (1997); *see also* 38 C.F.R. § 3.304(f) (1997). Where a clear diagnosis of PTSD exists, the sufficiency of the claimed in-service stressor is presumed. *Cohen, supra.* Nevertheless, credible evidence that the claimed in-service stressor actually occurred is also required. *Id.;* 38 C.F.R. § 3.304(f). Where the claimed PTSD stressor is related to combat, service department evidence that the veteran was engaged in combat or received "the Purple Heart, Combat Infantryman Badge, or similar citation will be accepted, in the absence of evidence to the contrary, as conclusive evidence of the claimed in[-]service stressor." *Id.* If the claimed stressor is not combat related, it must be corroborated by credible supporting evidence. *See Cohen,* 10 Vet.App. at 142. This Court has held that "[t]here is nothing in the statute or the regulations which provides that corroboration must, and can only, be found in the service records." *Dizoglio v. Brown,* 9 Vet.App. 163, 166 (1996) (quoting *Doran v. Brown,* 6 Vet.App. 283, 289 (1994)). However, when a claim for PTSD is based on a noncombat stressor, "the noncombat veteran's testimony alone is insufficient proof of a stressor," *Dizoglio,* 9 Vet.App. at 166, and "credible supporting evidence of the actual occurrence of an in-service stressor cannot consist solely of after-the-fact medical nexus

evidence," *Moreau v. Brown,* 9 Vet.App. 389, 396 (1996).

 A December 1989 Board decision denied the appellant's PTSD claim because he lacked credible evidence of the occurrence of his in-service stressor (rape) as required by *Cohen.* Since the 1989 disallowance for the PTSD claim, the appellant has presented as evidence of an in-service stressor his testimony, private and VA medical records, and insurance documents. Although some of these documents were not previously in the record, they are cumulative of the evidence in the record at the time of the Board's prior disallowance. Therefore, they cannot be considered "new." In February 1996, VA revised its procedure concerning the evaluation of PTSD claims. Under Change 49 to VA ADJUDICATION PROCEDURE MANUAL, M21–1 [hereinafter MANUAL M21–1], "alternative sources" may provide credible evidence of a noncombat stressor in PTSD claims based on personal assault. *See* MANUAL M21–1, Part III, Change 49, ¶ 5.14 (Feb. 20, 1996). This manual provision does not provide a basis to reopen or remand this claim. *See Routen v. West,* 142 F.3d 1434, (Fed.Cir.1998), *aff'g Routen v. Brown,* 10 Vet.App. 183 (1997); *Karnas v. Derwinski,* 1 Vet.App. 308 (1991).

 In *Karnas,* the Court held that when a law or regulation changes after the claim has been filed or reopened and before the administrative or judicial appeal process has been concluded, the version most favorable to the veteran applies unless Congress provided otherwise or permitted the Secretary to do otherwise and the Secretary did so. *Id.* at 312–13. Where such a change takes place, *Karnas* requires a remand of the claim for readjudication. *Id.* at 311. However, Mr. Anglin's previously disallowed claim was final at the time Change 49 to MANUAL M21–1 was promulgated. Consequently, he cannot avail himself of the relaxed evidentiary and adjudicative procedures provided by Change 49 unless his claim is reopened under section 5108.

As stated previously, the Secretary must reopen a final previously disallowed claim when new and material evidence is presented or secured. *See* 38 U.S.C. §§ 5108, 7105(c); *Barnett, supra.* The *Routen* Court held that

a regulatory change in an evidentiary burden could not constitute new and material evidence. *Routen,* 142 F.3d at 1442. Thus, the appellant cannot rely on the Change 49 evidentiary revision to bolster his argument that his claim should be reopened. The change is not evidence.

Further, in *Routen,* the Court held that there is no basis for review of a previously adjudicated claim based on an intervening or liberalizing change in the law, unless the change creates a "new cause of action" or forms a new basis for entitlement to a benefit. *Routen,* 142 F.3d at 1441 (quoting *Spencer v. Brown,* 4 Vet.App. 283, 288–89 (1993), *aff'd,* 17 F.3d 368 (Fed.Cir.), *cert. denied,* 513 U.S. 810, 115 S.Ct. 61, 130 L.Ed.2d 19 (1994)). Change 49 to MANUAL M21–1 does not create a new cause of action for the appellant. Therefore, his attempts to reopen may not otherwise be considered a new claim or cause of action.

Accordingly, upon de novo review, the Court holds that no new and material evidence has been presented to reopen the previously disallowed PTSD claim.

## III. CONCLUSION

Upon consideration of the record, the Court holds that the appellant has not demonstrated that the Board committed either legal or factual error that would warrant reversal or remand concerning reopening of the claim for PTSD and the Board's finding that the neurologic hand disorder claim was not well grounded. Therefore, the Board's decisions denying reopening of the PTSD claim and finding the neurologic hand disorder claim not well grounded are AFFIRMED. The Court VACATES the Board's decision on the back disorder claim and REMANDS the matter for further development, consistent with this opinion and in accordance with all other applicable law and regulation. Further, the decision concerning the bladder dysfunction claim is VACATED and REMANDED for consideration by the Board pending the outcome of the back disorder claim. On remand, "the appellant will be free to submit additional evidence and

argument" on the remanded claims. *Quarles v. Derwinski,* 3 Vet.App. 129, 141 (1992).

SO ORDERED.