James W. STANLEY, Jr., Claimant–Appellant,

v.

Anthony J. PRINCIPI, Secretary of Veterans Affairs, Respondent–Appellee.

No. 01–7017.

United States Court of Appeals, Federal Circuit.

March 14, 2002.

James W. Stanley, Jr., of North Little Rock, Arkansas, pro se.

J. Reid Prouty, Attorney, Civil Division, Commercial Litigation Branch, Department of Justice, of Washington, DC, argued for respondent-appellee. On the brief were Stuart E. Schiffer, Acting Assistant Attorney General; David M. Cohen, Director; Bryant G. Snee, Assistant Director; and Marian E. Sullivan, Trial Attorney. Of counsel on the brief were Donald E. Zeglin, Deputy Assistant General Counsel; and Michael J. Timinski, Attorney, Department of Veterans Affairs, of Washington, DC.

Before MAYER, Chief Judge, RADER, and DYK, Circuit Judges.

DYK, Circuit Judge.

This case involves a claim for attorneys' fees pursuant to 38 U.S.C. § 5904(c), which limits fees to services provided after the "Board of Veterans' Appeals first makes a final decision in the case." 38 U.S.C. § 5904(c)(1). We conclude that the statute was designed to allow attorneys' fees, after the initial claims proceeding, in connection with proceedings to reopen a claim on the grounds of new and material evidence, 38 U.S.C. § 5108, or clear and unmistakable error, 38 U.S.C. § 5109(A). We also hold that under 38 U.S.C. § 5904(c), there has been another final decision in connection with proceedings to reopen a claim after there has been a final Board of Veterans' Appeals ("Board" or "BVA") decision on a particular issue in

the course of the reopening proceeding. We accordingly vacate the decision of the Court of Appeals for Veterans Claims and remand to that court for further proceedings.

## BACKGROUND

Kenneth Thurman, a veteran, filed a claim with the Veterans' Administration ("VA")[1] for service connection of a cervical spine disability. The Regional Office ("RO") in New Orleans, Louisiana denied this claim in August 1986. Because Mr. Thurman did not appeal this decision, it became final one year later. See 38 U.S.C. § 7105(b)(1) and (c) (2000); 38 C.F.R. § 20.302(a) (2001). In a January 1990 rating decision, the Little Rock, Arkansas RO denied Mr. Thurman's application to reopen his claim for the cervical spine injury on the ground of no new and material evidence, leading Mr. Thurman to file a notice of disagreement with that decision in July 1990.

In August 1994, Mr. Thurman employed appellant, James W. Stanley, Jr., to represent him in his claims for veterans' benefits. Mr. Thurman and Mr. Stanley signed a retainer agreement in August 1994, which was also filed with the Board. This retainer agreement provided:

Client agrees to pay a fee of 25% retroactive benefits in connection with the Client's claim with the Department of Veterans Affairs. It is understood this is a contingent fee and Client will only owe James W. Stanley, Jr. in the event [he] receives a favorable decision on the

---

1. The Veterans' Administration was renamed the Department of Veterans Affairs in 1988. Department of Veterans Affairs Act, Pub.L. No. 100–527, 102 Stat. 2635 (1988).

Throughout this opinion, "VA" will be used as an abbreviation for both the Veterans' Administration and the Department of Veterans Affairs.

claim at any level of the proceedings.[2]

A hearing was held before the RO in Little Rock, Arkansas on May 1, 1995, where Mr. Stanley presented evidence in connection with a request to reopen Mr. Thurman's previously denied claim for service connection of his cervical spine injury. Mr. Thurman appealed the January 1990 RO rating decision denying his application to reopen his cervical spine injury claim. In March 1996, the Board concluded that "new and material evidence has been submitted to reopen a claim for service connection" for the cervical spine injury, and remanded in order to allow Mr. Thurman's claim to be further reviewed by the RO after Mr. Thurman had been examined by a neurosurgical specialist. The Board did not address the claim for total disability for unemployability ("TDIU").

To comply with the Board's remand order, on June 12, 1996, there was another hearing before the Little Rock, Arkansas RO reviewing the evidence associated with Mr. Thurman's cervical spinal disorder. At this hearing, Mr. Stanley also indicated that he was "fil[ing] today a claim for total disability for unemployability [TDIU] purposes contending that all of [Mr. Thurman's] disabilities that he contends or that have already been found to be service connected render him unemployable." On September 10, 1996, the RO granted service connection for the cervical spine injury effective July 27, 1989, and entitlement to individual unemployability or TDIU effective June 12, 1996.

On October 22, 1996, Mr. Stanley and Mr. Thurman signed a second fee agreement, which they filed with the Board in November 1996. This fee agreement provided for a contingent fee of $13,821, which equaled 25% of the past-due benefits awarded to Mr. Thurman in September 1996 for residuals of his cervical spine injury. In a December 1996 letter, Mr. Stanley indicated that "[t]here was a final BVA decision on Mr. Thurman's claim for cervical disorder dated [March 1996]," and that he was "not going to charge a fee for the issue of ... TDIU unless and until [the] BVA renders a final ruling."

In May 1997, the Board raised the issue of Mr. Stanley's eligibility for payment of attorneys' fees *sua sponte* and noted that 38 C.F.R. § 20.609(h) requires attorneys' fees be paid out of "past-due benefits awarded as a result of a successful appeal to the Board ... or an appellate court or as a result of a reopened claim before [the Department of Veterans Affairs] following a prior denial of such benefits by the Board ... or an appellate court." *In re Fee Agreement of Stanley*, No. 97–08–640, slip op. at 4 (Bd.Vet.App. May 12, 1997) ("*Stanley I*"). Relying on 38 U.S.C. § 5904(c)(1) and 38 C.F.R. § 20.609(c), the Board stated that there also needed to be a final decision on the issue involved in the case. The Board concluded that although "the Board's March 1996 decision was favorable as to [reopening of a prior unappealed denial of service connection for a cervical spine disorder], it cannot be deemed to constitute a successful appeal to the Board on ... the issue of entitlement to service connection for a cervical spine disability, nor can it be deemed to constitute a 'final decision' on the 'issue ... involved' by the Board...." *Id.* Accordingly, the Board decided that Mr. Stanley had

---

2. The attorneys' fees statute provides that legal fees are paid directly by the Secretary from "past-due benefits awarded on the basis of the claim." 38 U.S.C. § 5904(d)(2)(A)(i) (2000).

not satisfied the criteria for payment of attorneys' fees from past-due benefits.

Mr. Stanley summarized his claim for attorneys' fees in his February 26, 1998, letter to the Department of Veterans Affairs, Office of the Chief Counsel. In this letter, Mr. Stanley urged that he could charge fees on the cervical spine disorder beginning with the work he completed after the March 1996 BVA decision. He further claimed that the failure of the Board to adjudicate the TDIU issue constituted a de facto final decision on the TDIU issue, allowing him to charge fees on this claim from the time it was first raised on June 12, 1996. He reiterated these contentions in a May 1998 letter.

In October 1998, the Board found that there had been no final Board decision in March 1996 on either the cervical spine or TDIU claims. *In re Fee Agreement of Stanley*, No. 98–10 383, slip op. at 10, 12 (Bd.Vet.App. Oct. 27, 1998) ("*Stanley II* "). Consequently, no fee could be charged for Mr. Stanley's representation of Mr. Thurman. *Id.* at 15.

■ Mr. Stanley appealed to the Court of Appeals for Veterans Claims. The Court of Appeals for Veterans Claims identified the issue for review as whether there had been a final Board decision in March 1996 with respect to Mr. Thurman's claims for a cervical spine disorder and TDIU. The Court of Appeals for Veterans Claims concluded that there had been no final decision in March 1996 with respect to either claim because the Board had

remanded Mr. Thurman's claim for a cervical spine disorder to the RO, and "[a] remand by the Board to the RO does not constitute a final decision by the BVA." *Stanley v. Gober*, No. 98–2322, slip op. at 4 (Vet.App. Aug.29, 2000) ("*Stanley III* "). The Court of Appeals for Veterans Claims further stated:

> The TDIU issue was dependent on and inextricably intertwined with the appellant's claim regarding his cervical spine disability, and was decided by the RO along with that claim. Since we have held that there is no final BVA decision regarding the cervical spine claim, there is also no final BVA decision regarding the TDIU claim.

*Id.* at 5. Accordingly, the Court of Appeals for Veterans Claims affirmed the Board's denial of legal fees for the cervical spine disability and TDIU claims.[3] Mr. Stanley filed this timely appeal.

## DISCUSSION

### I

■ This court has jurisdiction over this appeal pursuant to 38 U.S.C. § 7292. We review an interpretation of statutory provisions by the Court of Appeals for Veterans Claims without deference. *Howard v. Gober*, 220 F.3d 1341, 1343 (Fed.Cir.2000).

### II

The award of attorneys' fees in veterans cases is governed by 38 U.S.C. § 5904, which provides in pertinent part:

---

3. During the initial proceeding, Mr. Stanley also sought legal fees in connection with Mr. Thurman's claim for post-traumatic stress disorder ("PTSD"). The Court of Appeals for Veterans Claims vacated the Board decision denying attorneys' fees for the PTSD claim and remanded the PTSD claim for further adjudication. The claim for those fees is not involved in this appeal. The remand by the Court of Appeals for Veterans Claims does not deprive this court of jurisdiction to review the judgments with respect to the cervical spine injury and the TDIU claims. *See Williams v. Principi*, 275 F.3d 1361, 1364 (Fed.Cir.2002).

(c)(1) ... [I]n connection with a proceeding before the Department with respect to benefits under laws administered by the Secretary, a fee may not be charged, allowed, or paid for services of agents and attorneys with respect to services provided before the date on which the Board of Veterans' Appeals *first makes a final decision in the case.* Such a fee may be charged, allowed, or paid in the case of services provided after such date only if an agent or attorney is retained with respect to such case before the end of the one-year period beginning on that date. *The limitation in the preceding sentence does not apply to services provided with respect to proceedings before a court.*

38 U.S.C. § 5904(c)(1) (2000) (emphases added).[4]

■ The concept of "finality" with respect to judicial decisions does not have a single meaning applicable in all contexts. In the veterans' law area alone, we have had occasion to consider its meaning with respect to the appealability of decisions from the Court of Appeals for Veterans Claims to this court, *Williams v. Principi,* 275 F.3d 1361, 1364–65 (Fed.Cir.2002), and from the Board to the Court of Appeals for Veterans Claims, *Howard v. Gober,* 220 F.3d 1341, 1344 (Fed.Cir.2000). None of those decisions is particularly helpful here because we are faced with construing a somewhat unusual phrase—"first makes a final decision in the case." 38 U.S.C. § 5904(c)(1) (2000). That language is itself inconsistent with traditional notions of finality under statutes such as 28 U.S.C. § 1291, which require that the decision in this case leaves no further issues to resolve. *See Catlin v. United States,* 324 U.S. 229, 233, 65 S.Ct. 631, 89 L.Ed. 911 (1945) ("A 'final decision' generally is one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment."). The concept of a "first ... final decision" necessarily implies that there may be a second "final" decision or even further "final" decisions. We turn to the legislative history for guidance.

Section 5904 (formerly section 3404) was enacted in 1988 at the same time that Congress first provided for judicial review of the Secretary's determinations in veterans cases. Before 1988, claims for attorneys' fees were strictly limited to $10 per claim. H.R.Rep. No. 100–963, at 15 (1988), *reprinted in* 1988 U.S.C.C.A.N. 5782, 5797.

According to the 1988 House Report on the Veterans' Judicial Review Act, historically the limitations on attorneys' fees were intended to serve two purposes. First, the limitations "protect the interests of veterans from the perceived threat that agents or attorneys would charge excessive fees for their services, which essentially required only the preparation and presentation of an application for benefits." H.R.Rep. No. 100–963, at 16 (1988), *reprinted in* 1988 U.S.C.C.A.N. 5782, 5798. Second, "because the process for seeking veterans benefits has historically been intentionally structured as informal and nonadversarial, the assistance of paid agents or attorneys was not deemed necessary or desirable in the overwhelming majority of cases." *Id.* at 16–17, 1988 U.S.C.C.A.N. at 5798. The second of these considerations was viewed as having less force given the 1988 revisions that for the first time allowed judicial review.

---

**4.** In all relevant respects, the statutory and regulatory language of the attorneys' fees provisions has not changed since 1994 when appellant and Mr. Thurman first signed the retainer agreement.

Both the Senate and House Reports recognized the importance of retaining legal counsel in the newly allowed judicial proceedings. Indeed, the Senate Report noted that "the new right to judicial review ... would be a hollow right indeed without some easing of the limitation on attorneys' fees," S.Rep. No. 100–418, at 63 (1988), from the previous limitation of $10 per claim.

■ In addition to providing attorneys' fees in judicial review proceedings, section 5904(c) was designed to allow veterans to retain paid counsel in connection with VA proceedings to reopen final Board decisions, but to bar the retention of paid counsel in connection with the original VA proceedings, which were viewed as presenting less complex issues. This approach is readily apparent from the legislative history. The Senate Report concluded:

> [I]t may be unnecessary for a claimant to incur the substantial expenses for attorney representation that may not be involved in appealing the case for the first time to the BVA.... However, once the BVA renders a decision adverse to the claimant on the merits, the need for the assistance of an attorney is then markedly greater with respect to such issues as seeking a *reopening* and *reconsideration* and deciding whether to proceed to court.

*Id.* at 63–64 (emphases added).[5] The Senate Report specifically distinguishes the first final decision from decisions rendered after a reopening:

> [A]ny time after the BVA has issued a final decision—that is, its first decision on the merits, as distinguished from subsequent decisions rendered after a reopening—the claimant would have the option of retaining an attorney, under fee limitations far less restrictive than the existing $10 limitation, to proceed further before the BVA or the VA if the claimant can demonstrate either that there is new and material evidence ... or that there is other good cause to reopen....

*Id.* at 66.

The House Report accompanying H.R. 5288, which proposed language that was a close precursor to the final language of the statute,[6] similarly noted that the original VA proceedings should be handled differently from proceedings to reopen the case:

> [Congress] would repeal the existing limitation of $10 on all such matters, and would replace it with a *two-stage rule.* Generally, all representation in matters before the Veterans' Administration would have to be undertaken without the payment of any fee whatsoever. As proposed to be revised, section 3404(c) [currently codified at section 5904(c) ] would prohibit the charging or payment of any fee for services rendered at any time prior to the time that the Administrator

---

5. The Senate Report further suggests that the appropriate circumstances for the existing limits on attorneys' fees are the "initial claims stages in the sense that applying for VA benefits is a relatively uncomplicated procedure, with the VA generally securing the relevant military records as well as evaluating the merits of the claim." *Id.* at 63.

6. The relevant language of H.R. 5288 provides in pertinent part:

> In connection with a case relating to benefits under laws administered by the Veterans' Administration, no fee may be charged, allowed, or paid for services of agents and attorneys with respect to proceedings occurring or services provided prior to the time the Administrator issues a statement of the case....

> H.R. 5288, 100th Cong. § 4 (Sept. 14, 1988).

issues a statement of the case.... [B]y prohibiting an attorney or agent from charging for services until the *VA affirms its decision to deny a claim*, the committee intends to preserve as much of the informal and efficient means of claim adjudication as possible.

H.R.Rep. No. 100–963, at 28 (1988), *reprinted in* 1988 U.S.C.C.A.N. 5782, 5810–11 (emphases added).

### III

In this case, there are two distinct claims for service connection: (1) cervical spine injury and (2) TDIU.

### A. *The Cervical Spine Injury Claim*

▮ Here the original VA proceedings with respect to the cervical spine claim became "final" in August 1987, exactly one year after the RO rating decision, because the veteran failed to file a notice of disagreement with the RO regarding that decision. 38 U.S.C. § 7105(b)(1)[7] and (c) (2000);[8] 38 C.F.R. § 20.302(a) (2001).[9]

---

7. 38 U.S.C. § 7105(b)(1) (2000) provides:

Except in the case of simultaneously contested claims, notice of disagreement shall be filed within one year from the date of mailing of notice of the result of initial review or determination. Such notice, and appeals, must be in writing and be filed with the [agency] which entered the determination with which the disagreement is expressed (hereafter referred to as the "agency of original jurisdiction"). A notice of disagreement postmarked before the expiration of the one-year period will be accepted as timely filed.

8. 38 U.S.C. § 7105(c) (2000) provides: "If no notice of disagreement is filed in accordance with this chapter within the prescribed period, the action or determination shall become final and the *claim will not thereafter be reopened or allowed,* except as may otherwise be provided by regulations not inconsistent with this title." (emphasis added).

By becoming "final," the RO decision could only be reopened under the statute on the basis of new and material evidence or clear and unmistakable error ("CUE"). 38 U.S.C. §§ 5108, 5109A (2000).[10] *See Roberson v. Principi,* 251 F.3d 1378, 1384 (Fed.Cir.2001) ("When a decision of the VA is final, ... there are two grounds for attack on that decision under the statute. The veteran can seek to reopen a disallowed claim based on new and material evidence ... or ... based on CUE....").

▮ The retention of paid counsel would have been permissible at the point when the RO decision became "final." However, pursuant to 38 U.S.C. § 5904(c)(1), an agent or attorney is allowed to charge a fee "only if [he or she] is retained with respect to such case before the end of the one-year period beginning on that date." Mr. Stanley was not retained within one year after that "final" decision. Instead, Mr. Stanley argues that the March 1996 Board decision constituted another "final decision in the case" within the meaning of the attorneys' fees statute.

---

9. 38 C.F.R. § 20.302(a) (2001) provides in pertinent part: "[A] claimant or his or her representative must file a Notice of Disagreement with a determination by the agency of original jurisdiction within one year from the date that that agency mails notice of the determination to him or her. Otherwise, that determination will become final."

10. We do not here address the question of attorneys' fees in the context of proceedings challenging the finality of Board decisions on the ground of "grave procedural error." *Hayre v. West,* 188 F.3d 1327, 1333 (Fed.Cir. 1999). We note that this court has recently ordered in banc consideration of the continuing validity of *Hayre. See Cook v. Principi,* 275 F.3d 1365, 1366 (Fed.Cir.2002).

*See* 38 U.S.C. § 5904(c)(1) (2000). We agree.

The reopening proceeding was itself a separate "case," and there was a "final decision" in the reopening case. In the context of a reopening "case," finality (unlike the situation in the initial claims proceeding) requires only the final decision of an issue. If finality required an appealable final resolution of the reopening controversy, the provision for attorneys' fees in VA reopening proceedings would be severely restricted. The VA itself has recognized that a reading of the statute requiring a final decision in the reopening proceedings would defeat its very purpose—to allow the retention of paid counsel in the various proceedings after the initial final decision. Indeed, in the Federal Register, the VA clearly concluded that the definition of final decision on an issue must be liberal enough to allow attorneys' fees in reopening proceedings:

> [I]f we defined "issue" as meaning a challenge based on CUE, an attorney would never be able to charge for services in connection with a CUE motion because the Board would not have issued a final decision on the "issue" until after the CUE process was complete.

Subpart G, Rule 609(c)—Attorney Fees, 64 Fed.Reg. 2134 (January 13, 1999).

To defend its interpretation here, the government relies primarily on the regulation, 38 C.F.R. § 20.609(c),[11] dealing with attorneys' fees. Section 20.609(c)(1) provides that an attorney can only charge fees if there is "[a] final decision ... with respect to the issue, or issues, involved." 38 C.F.R § 20.609(c)(1) (2001). Section 20.609(c) then refers us to 38 C.F.R. § 20.1401(a), which defines a "final decision" as "one which was appealable." 38 C.F.R. § 20.1401(a) (2001).[12] The government also points to 38 C.F.R. § 20.1100(b) (2001), which states that "[a] remand is in the nature of a preliminary order and does not constitute a final decision of the Board."

However, we conclude that section 20.609(c) is only addressing the question of when a "final" decision is rendered in the original claim proceedings (where the regulations appropriately require that the Board decision be appealable to the Court of Appeals for Veterans Claims), and not the question of recovery of fees after further final decisions in reopening proceedings. We think that the statute and regulations must be read to allow the retention

**11.** 38 C.F.R. § 20.609(c) (2001) provides in pertinent part:

> [A]ttorneys-at-law and agents may charge claimants or appellants for their services only if all of the following conditions have been met:
> (1) A final decision has been promulgated by the Board of Veterans' Appeals with respect to the issue, or issues, involved;
> (2) The Notice of Disagreement which preceded the Board of Veterans' Appeals decision with respect to the issue, or issues, involved was received by the agency of original jurisdiction on or after November 18, 1988; and
> (3) The attorney-at-law or agent was retained not later than one year following the

> date that the decision by the Board of Veterans' Appeals with respect to the issue, or issues, involved was promulgated. ...

**12.** 38 C.F.R. § 20.1401(a) (2001) provides:

> *Issue.* Unless otherwise specified, the term "issue" in this subpart means a matter upon which the Board made a final decision (other than a decision under this subpart). As used in the preceding sentence, a "final decision" is one which was appealable under Chapter 72 of title 38, United States Code, or which would have been so appealable if such provision had been in effect at the time of the decision.

of paid counsel in reopening proceedings after a Board decision which is final as to a particular "issue," whether or not that particular Board decision would be appealable to the Court of Appeals for Veterans Claims. Reading the statute in this manner, the Board made a final decision as to the cervical spine injury claim when it concluded in March 1996 that the claim could be reopened on the basis of new and material evidence.

### B. *The TDIU Claim*

Mr. Stanley also urges that the Board has rendered a de facto final decision on the TDIU claim by failing to adjudicate the claim after it was properly raised in March 1996. We find the appellant's argument difficult to understand. The TDIU claim was first filed in June 1996. There can be no claim for attorneys' fees with respect to the TDIU claim until the Board has rendered a "first . . . final decision," 38 U.S.C. § 5904(c)(1), with respect to that claim, that is, an appealable final decision on the initial claim. Both the statute and the regulations are explicit about this requirement. *See id.;* 38 C.F.R. § 20.609(c)(1) (2001). Since there had been no final decision in the initial proceedings with respect to the TDIU claim, which would be appealable to the Court of Appeals for Veterans Claims, there can be no claim for attorneys' fees for the period before such a final decision.

### CONCLUSION

We conclude that attorneys' fees are available in connection with the proceedings associated with reopening a claim after the Board first makes a final decision with respect to a particular issue in the reopening proceedings, even if the decision is not appealable. In contrast, we conclude that in the original proceedings there can be no entitlement to attorneys' fees until an appealable decision has been rendered. Thus, there was a final decision with respect to the cervical spine injury claim in March 1996, and no final decision in March 1996 with respect to the TDIU claim. We vacate and remand to the Court of Appeals for Veterans Claims for further proceedings consistent with this opinion.

*VACATED AND REMANDED*

### COSTS

No Costs.

RADER, Circuit Judge, dissenting.

To be eligible to receive attorney fees, Mr. Stanley must meet all the criteria set forth in 35 U.S.C. § 5904(c) and 38 C.F.R. § 20 .609. These provisions require that the Board of Veterans' Appeals "first makes a final decision in the case." 35 U.S.C. § 5904(c)(1). This case asks whether the March 1996 Board remand to the regional office constitutes a final decision under 35 U.S.C. § 5904(c)(1) and thus entitles Mr. Stanley to attorney fees. In simple terms, is a remand a final decision?

The applicable regulation, 38 C.F.R. § 20.1100(b), states: "A remand is in the nature of a preliminary order and does not constitute a final decision of the board." Furthermore, the Court of Veterans Appeals has consistently held that a remand by the Board to the regional office is not a final decision of the Board. *Anglin v. West,* 11 Vet.App. 361, 363 (1998); *In re Fee Arrangement of Stanley,* 9 Vet.App. 203, 206–07 (1996). Thus, in this case, the Court of Veterans Appeals correctly found that the March 1996 Board remand to the regional office to reopen Mr. Thurman's claim does not constitute a final decision of

the Board. Without a final decision as required by 35 U.S.C. § 5904(c), Mr. Stanley cannot yet receive attorney fees for his representation of Mr. Thurman. The Court of Appeals for Veterans Claims so held. On very strained reasoning, this court reverses.

This court twists the statutory language "a fee may not be charged ... before the date on which the Board of Veterans' Appeals first makes a final decision" to require a "first ... final decision" and perhaps later other "final decisions." Thus, this court reasons that the remand was a "first final decision." Far from breaking the concept of finality into layers, Title 38 simply requires a final decision before an attorney fee award. Period. No ambiguity here. As noted above, even the regulation clarifies that a remand is not a fictitious "first final decision" to be followed presumably by a second, third, or fourth "final" decision—with, I presume, fee proceedings after each "final" decision.

Because a decision is only final once as the statute requires, and because the regulation specifies that a remand is not a final decision, I must respectfully dissent.