# United States Court of Appeals for the Federal Circuit

---

**EDWARD C. MORSE,**
*Claimant-Appellant*

**v.**

**DENIS MCDONOUGH, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee*

---

2020-1838

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 18-4145, Judge Joseph L. Toth.

---

Decided: April 19, 2021

---

WINONA W. ZIMBERLIN, Manchester, CT, argued for claimant-appellant.

IGOR HELMAN, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent-appellee. Also represented by JEFFREY B. CLARK, ROBERT EDWARD KIRSCHMAN, JR., LOREN MISHA PREHEIM; BRIAN D. GRIFFIN, BRANDON A. JONAS, Office of General Counsel, United States Department of Veterans Affairs, Washington, DC.

---

Before DYK, BRYSON, and O'MALLEY, *Circuit Judges*.

BRYSON, *Circuit Judge*.

Appellant Edward C. Morse, a veteran, seeks to have the benefits he is receiving for a service-connected disability made retroactive to the date he first filed a claim for those benefits. The Board of Veterans' Appeals denied his request, and the Court of Appeals for Veterans Claims ("the Veterans Court") upheld the Board's decision. We affirm.

I

Mr. Morse served in the U.S. Navy between March 1970 and October 1972. During the six-month period between September 1971 and March 1972, he was stationed at the U.S. Naval Support Facility in Da Nang, Vietnam.

In 1999, Mr. Morse filed a claim for "compensation or pension" in which he listed several disabilities he had suffered from since February 1996, including post-traumatic stress disorder ("PTSD"). J.A. 18–19. In 2000, he filed a claim for service connection for PTSD.[1] A regional office of the Department of Veterans Affairs ("DVA" or "VA") granted his claim for a nonservice connected pension in 2001, finding that he was permanently and totally disabled due to a herniated disc in his spine and degenerative joint disease. He was subsequently awarded Social Security disability benefits.

In a 2002 rating decision, the regional office denied Mr. Morse's claim of service connection for PTSD. The rating decision noted that hospital records between 1999 and

---

[1]    The parties disagree about whether Mr. Morse's 1999 claim or his 2000 claim should be treated as his initial claim for service-connected PTSD benefits. It is not necessary to resolve that dispute for the purposes of this appeal.

2001 showed occasional diagnoses of PTSD but no ongoing treatment for that condition. The rating decision noted that Mr. Morse claimed that he had witnessed the execution of three prostitutes, served as a perimeter guard, gone on patrols, and shot someone in the leg, all during his service in Vietnam. He also claimed that he was involved with two riots during which he had to fire into the ground to disperse the crowd, that a guard he was supposed to relieve had been killed, and that he had to pick up body parts after an ammunition truck blew up in front of his base. The rating decision stated that "[a]lthough we have evidence of a diagnosis of post-traumatic stress disorder[,] there has been no credible evidence of verification of the claimed stressors." J.A. 21. The regional office therefore found "no basis on which to establish service connection for post-traumatic stress disorder." *Id.* Mr. Morse did not appeal from that rating decision, which became final.

In 2004, Mr. Morse sought to reopen his PTSD claim. Medical records relating to a period of hospitalization during that year included a diagnosis of PTSD, among other health issues. In November 2004, however, the regional office denied Mr. Morse's request for reopening, finding that the evidence he had submitted was not new and material. Mr. Morse filed a notice of disagreement with the regional office's decision, and in response the regional office reversed course and reopened his claim. The regional office indicated at that time that it had made a request for additional service department records to be used in further adjudication of the claim.

The regional office received the requested service department records on July 11, 2005. Those records showed that in June 1972 Mr. Morse saw a psychiatrist who reported that Mr. Morse was "very tense and nervous," appeared "moderately depressed," and was anxious about personal problems, including finances and his wife's behavior while he was gone. J.A. 27. Another medical report from May 1971 assessed his condition as "anxiety-

situational." J.A. 28. The service department records also included a report of a Vietnamese sailor being killed in Da Nang when a cement truck went out of control and struck him. In his testimony before a DVA hearing officer on July 27, 2005, Mr. Morse identified the truck incident as a stressor for his PTSD.

In October 2006, Mr. Morse underwent a compensation and pension ("C&P") examination, which included a medical examination and review of the materials in his claims file. In the C&P examination report, the examiner concluded that Mr. Morse's case was "challenging with respect to definitive diagnosis." J.A. 94. Although the examiner noted that the medical record "is replete with diagnoses of PTSD" based on the symptoms Mr. Morse reported, he found that Mr. Morse was "unable, at least spontaneously, to provide symptoms that convincingly relate to his reported military exposure." *Id.* In light of all the circumstances, the examiner concluded that diagnosis of military-related PTSD was "impossible at the present time." *Id.*

After reviewing the 2006 medical examination and other evidence of record, including the additional service records obtained in 2005, the regional office denied Mr. Morse's claim to service connection for PTSD. The office noted that the C&P examiner found that Mr. Morse did not have PTSD. That determination, the office found, carried greater weight than the prior diagnoses of PTSD in Mr. Morse's record.

Mr. Morse appealed the regional office's decision to the Board of Veterans' Appeals, which affirmed the regional office's decision in 2008. The Board noted that the record showed several diagnoses and hospitalizations for PTSD dating back to 1999, but that a two-day evaluation in 2000 had not supported a diagnosis of PTSD. Like the regional office, the Board relied heavily on the 2006 C&P examination, in which the examiner found that Mr. Morse

did not have PTSD but suffered from alcohol dependence, then in remission, and nonspecific depressive disorder. Mr. Morse did not appeal the Board's 2008 decision, which became final.

Mr. Morse subsequently sought to have the denial of benefits overturned on the ground of clear and unmistakable error. That claim was denied by the Board in 2014 and was not further pursued.

In 2009, Mr. Morse again sought to reopen his claim. A DVA examiner conducted a post-traumatic stress disorder examination and diagnosed Mr. Morse as suffering from PTSD with moderate symptoms. In addition, in January 2010 the regional office's Joint Services Records Research Center ("JSRRC") coordinator prepared a memorandum summarizing the traumatic events that Mr. Morse reported experiencing in Da Nang. The memorandum noted that it is "well documented that the Da Nang area of Vietnam often received rocket, mortar, and small arms attacks" and added that the events that took place, "as reported by the veteran, are confirmed and are otherwise consistent with the circumstances, conditions, and/or hardships of such service even though we were unable to locate official records of the specific occurrence." J.A. 47–48.

In 2010, the regional office reviewed the evidence of record and verified the stressor information Mr. Morse had submitted "as confirmed and otherwise consistent with the circumstances, conditions, and/or hardships of [his] service." J.A. 44. Based on those findings, the regional office determined that Mr. Morse had established service-connected PTSD. The regional office granted an effective date of August 5, 2009, the date Mr. Morse filed his most recent request for reopening.

Mr. Morse appealed from the regional office's determination as to the effective date of his benefits award, arguing that the effective date should have been made

retroactive to 1999, the date he first filed a claim referencing PTSD. After various remand proceedings, however, the Board in 2016 upheld the regional office's decision.

In his appeal to the Board, Mr. Morse argued that in its 2008 decision the Board had misapplied a DVA regulation, 38 C.F.R. § 3.156(c). That regulation provides that "at any time after VA issues a decision on a claim, if VA receives or associates with the claims file relevant official service department records that existed and had not been associated with the claims file when VA first decided the claim, VA will reconsider the claim." *Id.* § 3.156(c)(1). The regulation further provides that if the award of benefits is based at least in part on the newly obtained service department records, the award will be made effective "on the date entitlement arose or the date VA received the previously decided claim, whichever is later." *Id.* § 3.156(c)(3). Mr. Morse argued that if the 2008 Board had properly "reconsidered" his claim, it would have determined that he was suffering from PTSD from the time he initially filed his claim in 1999.

The 2016 Board ruled that the 2008 Board's decision had become final as to the evidence then of record and was not subject to revision on the same basis. In addition, the Board ruled that because no additional service records had been obtained since the Board's 2008 decision, the DVA was not required to conduct another reconsideration. Given the finality of the 2008 decision, the 2016 Board explained, "any prior claim for benefits was finally resolved, and, thus, cannot serve as the basis for the award of an earlier effective date." J.A. 134.

On appeal from the 2016 Board's decision, the Veterans Court granted the parties' joint motion for a partial remand. The parties agreed that the remand was warranted because the Board had not adequately discussed whether the 2010 memorandum from the DVA's JSRRC

coordinator was an "official service department record" that would trigger the reconsideration requirement of section 3.156(c) in connection with the 2009 reopening request.

On remand, the Board in 2018 found that the 2010 JSRRC memorandum did not constitute an "official service department record" within the meaning of section 3.156(c). For that reason, the 2010 memorandum did not require the DVA and the Board to reconsider Mr. Morse's claim following his 2009 reopening request. The Board therefore concluded, as it had in 2016, that the proper effective date for Mr. Morse's benefits award was August 5, 2009, the date on which Mr. Morse filed his most recent request to reopen.

The Board rejected, once again, Mr. Morse's argument that it should reconsider the original 2002 denial. Citing *Blubaugh v. McDonald*, 773 F.3d 1310 (Fed. Cir. 2014), the Board explained that the service department records received in 2005 did not justify an earlier effective date. The Board noted that those records "were specifically considered as part of a merits reconsideration of the Veteran's claim in the unappealed January 2008 Board decision." J.A. 160. The 2008 Board's consideration of those records in that proceeding, the 2018 Board explained, "exhausted VA's duty to reconsider the claim under 38 C.F.R. § 3.156(c)(1)." J.A. 160–61. Consequently, the Board ruled, "an earlier effective date based on those same service department records is not available under 38 C.F.R. § 3.156(c)." J.A. 161.

The 2018 Board reiterated the point made by the 2016 Board, that Mr. Morse was "essentially attacking the merits of the January 2008 Board decision, which is final." *Id.* Because no relevant service department records were added to the record after the denial of Mr. Morse's claim in 2008, the 2018 Board explained, "the Board's January 2008

decision is final as to the evidence then of record, and is not subject to revision on the same factual basis." *Id.*

Furthermore, the 2018 Board noted that although the 2008 Board had "reopened the claim rather than reconsidering it," the 2008 Board "did in fact reconsider the claim for service connection." J.A. 162. Therefore, according to the Board, while section 3.156(c) required the DVA "to reconsider the 2002 denial of PTSD based on the subsequent association of relevant service department records, such was accomplished in the January 2008 Board decision." *Id.*

Mr. Morse appealed to the Veterans Court, which affirmed. The court agreed with the 2018 Board that the 2008 Board's ruling became final when it was not appealed and that "VA's obligation to reconsider the PTSD claim upon receipt of new service department records was exhausted in 2008." *Morse v. Wilkie*, No. 18-4145, 2020 WL 959783, at *5 (Vet. App. Feb. 28, 2020). Moreover, the court concluded that although the 2008 Board referred to the claim as being "reopened" rather than "reconsidered," the 2008 Board had in fact conducted a "holistic reweighing of all record evidence and adjudication of the claim on the merits," which "satisfies the duty to reconsider under § 3.156(c)." *Id.* at *4. Finally, the court ruled that the 2010 memorandum by the regional office's JSRRC coordinator did not constitute a service department record that triggered a renewed obligation to reconsider Mr. Morse's claim. *Id.* at *6–7.

In any event, the court concluded that the 2008 Board had reviewed Mr. Morse's PTSD claim in light of the evidence of record at the time service connection was originally sought, along with the service department records obtained in 2005 and other evidence developed later. *Id.* at *4. The court held that the Board, having in effect "reconsidered" Mr. Morse's claim in 2008, was not required to do so again. *Id.* at *5–6.

## II

Mr. Morse raises two principal claims on appeal: (1) that the 2008 Board did not properly "reconsider" Mr. Morse's claim as required under 38 C.F.R. § 3.156(c); and (2) that the DVA employee's 2010 memorandum is a service department record and thus the 2018 Board should have reconsidered Mr. Morse's 1999 claim pursuant to section 3.156(c).

## A

Section 3.156(a) of the DVA regulations governing benefit claims for service-connected injuries or diseases provides that previously adjudicated claims can be reopened upon the presentation of "new and material evidence."  38 C.F.R. § 3.156(a).  If benefits are granted after the claim is reopened, the effective date from which those benefits are awarded is the date on which the request for reopening was filed.  *Id.*

Section 3.156(c) of the regulations creates an exception to that rule.  That provision applies when a veteran seeks to reopen a claim and official service department records are obtained that were not previously part of the claims file.  38 C.F.R. § 3.156(c)(1).  In that situation, the DVA is required to "reconsider" the veteran's claim, taking into account all the evidence of record, including the newly obtained service department records.  *Id.*  If the veteran is then granted benefits based at least in part on the service department records, the award of benefits is made retroactive to the date of the veteran's original claim, or the date on which the veteran became eligible for benefits, whichever is later.  *Id.* § 3.156(c)(3); *see Jones v. Wilkie*, 964 F.3d 1374, 1379 (Fed. Cir. 2020); *Blubaugh*, 773 F.3d at 1313.

### 1

At the outset, the government contends Mr. Morse's claims do not fall within this court's limited jurisdiction to

review decisions of the Veterans Court. Under 38 U.S.C. § 7292(a), we have jurisdiction to review any interpretation of a statute or regulation that was relied on by the Veterans Court in making its decision. Our jurisdiction does not extend to the review of a challenge to a factual determination or a challenge to a law or regulation as applied to the facts of a particular case, except to the extent that an appeal presents a constitutional question. *Id.* § 7292(d)(2).

We do not agree with the government that this case falls entirely outside our jurisdiction. The appeal in this case turns at least in part on a challenge to the Veterans Court's interpretation of section 3.156(c) of the DVA's regulations. In the course of our review, we confine ourselves to addressing Mr. Morse's arguments that flow from his challenge to the Veterans Court's interpretation of that regulation.

2

On the merits, Mr. Morse's challenge to the 2008 Board's ruling fails because Mr. Morse did not appeal the decision of the 2008 Board, which then became final. Ordinarily, a final decision of the DVA on a benefit claim is not subject to challenge other than on grounds of clear and unmistakable error or upon the submission of new and material evidence. *See Young v. McDonald*, 766 F.3d 1348, 1350 (2014); *Stanley v. Principi*, 283 F.3d 1350, 1357 (Fed. Cir. 2002); *Routen v. West*, 142 F.3d 1434, 1437–38 (Fed. Cir. 1998).

Mr. Morse argues that section 3.156(c) of the DVA's regulations renders the 2008 Board's decision non-final because of the service department records that the DVA received in 2005. The problem with that argument is that section 3.156(c) provides an exception to the finality of decisions made *before* previously unavailable service department records are obtained and considered by the DVA. In this case, the Board's 2008 decision was made

*after* those records were obtained and considered by the DVA. Although Mr. Morse believes the 2008 Board's consideration of the service department records obtained in 2005 was flawed, that argument is foreclosed, as the Veterans Court pointed out, because Mr. Morse did not appeal the 2008 Board's decision.[2]

As of 2009, Mr. Morse's only avenue for relief on his PTSD claim was to seek reopening of his claim for new and material evidence under section 3.156(a). He pursued that avenue of relief and succeeded. As a result, he received benefits retroactive to August 5, 2009, the date he filed that request to reopen.

Citing section 3.156(c), Mr. Morse contends that his award of benefits should have been made retroactive to the date of his initial claim in 1999. The problem with his argument is that there were no new service department records introduced into the record during the 2009 reopening proceeding, as explained in Part II-B below. Section 3.156(c) is therefore inapplicable to the 2009 reopening proceeding, which is now before the court, and Mr. Morse is thus not eligible for benefits running back to the date of his first PTSD claim. *See Blubaugh*, 773 F.3d at 1314 (Paragraphs (c)(3) and (c)(4) of section 3.156 do not apply if "the VA has already examined the newly associated service record and, despite that record, denied the veteran's claim on the merits.").

Mr. Morse argues that the 2008 Board's decision was not final for another reason: because in 2017 the Veterans Court remanded the matter to the Board for further proceedings. That argument is meritless. The Veterans

---

[2]    In 2016, the Board addressed and rejected Mr. Morse's claim that the 2008 Board's decision contained clear and unmistakable error. That decision was not appealed and became final.

Court remanded the matter for the Board to explain why it determined that the 2010 memorandum by the DVA's JSRRC coordinator was not an official service department record. The question whether that 2010 memorandum was an official service department record has no effect on the finality of the 2008 Board's decision, which pertained to the 2004 request for reopening.

Because the 2008 Board's decision is final, we do not address the merits of that decision, but only review the Veterans Court's decision to treat the 2008 Board's decision as a reconsideration. As the Veterans Court concluded, the 2008 Board in effect conducted a reconsideration of Mr. Morse's claim, even though it did not cite section 3.156(c) in its ruling or refer to its action as a reconsideration. Specifically, the 2008 Board analyzed all the evidence of record, including the service department records obtained in 2005. As the Veterans Court explained, section 3.156(c) requires nothing more.

For that reason, as the Veterans Court concluded, Mr. Morse was not deprived of any procedural right to which he was entitled under section 3.156(c).

B

Mr. Morse's second principal contention is that the 2010 memorandum from the regional office's JSRRC coordinator qualified as an official service department record and therefore when the DVA granted Mr. Morse service connection for his PTSD in 2010, it was required to make that award of benefits retroactive to the date of his initial claim. The Veterans Court rejected that argument, concluding that the 2010 memorandum was merely an internal DVA communication and not an official service department record within the meaning of section 3.156(c).

The government submits that Mr. Morse's argument regarding that memorandum falls outside our jurisdiction

under 38 U.S.C. § 7292.  In pertinent part, section 7292(a) limits our jurisdiction over decisions of the Veterans Court to "a review of the decision with respect to the validity of a decision of the [Veterans] Court on a rule of law or of any statute or regulation . . . or any interpretation thereof (other than a determination as to a factual matter) that was relied on by the Court in making the decision."  A second subsection of section 7292 dictates that we lack jurisdiction over any "challenge to the application of a law or regulation to the facts of a particular case."  38 U.S.C. § 7292(d)(2)(B).

The Veterans Court determined that, as a matter of law, an internal memorandum from a DVA employee commenting on evidence already of record does not constitute a service department record under section 3.156(c).  That determination is a legal interpretation of a regulation that was relied on by the Veterans Court and thus falls within our jurisdiction under section 7292(a).  Further, it appears that there is no factual dispute as to the contents or provenance of the 2010 memorandum, and thus the resolution of the legal issue would be sufficient, standing alone, to establish that Mr. Morse's argument regarding that memorandum is without merit.  Section 7292(d)(2)(B) would therefore not appear to create a jurisdictional bar in this case.  *See Thompson v. Shinseki,* 682 F.3d 1377, 1388 (Fed. Cir. 2012); *Halpern v. Principi,* 384 F.3d 1297, 1306 (Fed. Cir. 2004).  To the extent that there is a factual dispute regarding the legal status of the 2010 memorandum, resolution of that issue would entail an application of law to fact and thus would fall outside our jurisdiction in light of section 7292(d)(2)(B).

The Board found that the JSRRC coordinator's 2010 memorandum was produced by a DVA employee, not a service department, and that it merely summarized information that was already of record.  In particular, the Board found that the memorandum recited that "the events that took place as reported by the Veteran are

confirmed and are otherwise consistent with the circumstances, conditions, and/or hardships of such service even though official records of the specific occurrence were unable to be located." J.A. 157. In sum, the Board found that the memorandum did not contain any new information from official service department records, and thus did not constitute "an official service department record" for purposes of section 3.156(c). The Veterans Court sustained the Board's findings and its conclusion on that issue. In view of the Board's findings, the Veterans Court committed no legal error in reaching that conclusion.

## III

We have considered Mr. Morse's other arguments but have determined that none of them establish reversible error. We therefore uphold the decision of the Veterans Court.

**AFFIRMED**