# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 21-8048

BRYAN J. HELD, APPELLANT,

V.

DENIS MCDONOUGH,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued October 5, 2023)                    (Decided November 14, 2023)

*Kenneth H. Dojaquez*, of Topeka, Kansas, for appellant.

*James R. Drysdale*, with whom *Catherine C. Mitrano*, Acting General Counsel; *Mary Ann Flynn*, Chief Counsel; and *Jonathan G. Scruggs*, Acting Deputy Chief Counsel, all of Washington, D.C., were on the brief for the appellee.

Before ALLEN, FALVEY, and JAQUITH, *Judges*.

ALLEN, *Judge*: Words matter. And, for a court, when Congress uses the words at issue, they matter a lot. When stripped to its essentials, this appeal is about our duty to apply the law Congress enacted—not the one the Agency might have wished Congress had put on the books.

Appellant Bryan J. Held is a VA-accredited agent who agreed to represent U.S. Army veteran Eric D. Roberts on a contingent-fee basis before VA, an arrangement in which appellant would be entitled to receive 20% of past-due benefits awarded to the veteran based on appellant's representation. Appellant assisted the veteran in making a motion to revise a February 2017 VA regional office (RO) decision dealing with the veteran's PTSD disability rating based on clear and unmistakable error (CUE). That motion was successful, leading to an award of past-due benefits in a December 2019 RO decision. Appellant then sought fees for his successful representation of the veteran in connection with the CUE motion. This appeal, which is timely and over which the Court has jurisdiction,[1] concerns an August 24, 2021, Board of Veterans' Appeals decision that denied appellant any fees for his work in connection with the veteran's successful CUE motion.

---

[1] *See* 38 U.S.C. §§ 7252(a), 7266(a).

To summarize what follows, we will reverse the Board's decision that appellant is barred from receiving fees as a matter of law and remand this matter for further proceedings concerning whether agent fees are warranted under the fee agreement between appellant and the veteran. At the time of the December 2019 RO decision on the veteran's CUE motion, 38 U.S.C. § 5904(c)(1) provided that "a fee may not be charged, allowed, or paid for services of agents and attorneys with respect to services provided before the date on which a claimant is provided notice of the agency of original jurisdiction's [(AOJ's)] initial decision under section 5104 of this title with respect to the case."[2] The parties agree—and the Court concurs—that under section 5904(c)(1), the "initial decision . . . with respect to the case" refers to the February 2017 RO decision concerning the veteran's PTSD rating, the decision in which the veteran later asserted CUE was present. The parties also agree—and the Court concurs—that notice of that February 2017 decision was provided under 38 U.S.C. § 5104. So, everything that Congress required under section 5904(c)(1) to warrant a fee was in place when the RO granted the veteran's CUE motion in December 2019. This would appear to be an open and shut statutory case for awarding a fee. And it should have been as far as the statute was concerned.

So, why are we here? The answer is that the Board skipped over the statute Congress enacted. Instead, the Board relied on a regulation, 38 C.F.R. § 14.636(c)(2)(ii), to deny the fees appellant sought.[3] That regulation adds requirements to what Congress included in section 5904(C)(1) as that statute existed in December 2019 when VA granted the veteran's CUE motion. Although § 14.636(c)(2)(ii) does not use the statutory phrase "initial decision . . . with respect to the case," it nevertheless provides that agents (or attorneys) may charge fees in cases involving the representation of a veteran with a decision subject to a CUE motion. However, § 14.636(c)(2)(ii) conditions the entitlement to such fees on the filing of a qualifying Notice of Disagreement (NOD) on or after June 20, 2007. Both parties agree that the veteran here did not file such an NOD and that if § 14.636(c)(2)(ii) is valid, appellant is not entitled to a fee as a matter of law.

Appellant challenges the validity of § 14.636(c)(2)(ii), asserting that its fee limitation based on the submission of an NOD is inconsistent with the plain language of 38 U.S.C. § 5904(c)(1). This matter was referred to a panel of the Court primarily to address whether § 14.636(c)(2)(ii)

---

[2] 38 U.S.C. § 5904(c)(1).

[3] We don't fault the Board for relying on the regulation. It was bound to do so. *See* 38 C.F.R. § 20.105 (2023).

invalidly conditions eligibility for fees in connection with a successful CUE motion to revise an RO decision that had been issued before the effective date of the Veterans Appeals Improvement and Modernization Act of 2017 (AMA),[4] on an NOD having been filed with respect to the challenged decision on or after June 20, 2007. We held oral argument in this matter on October 5, 2023, at the University of Florida Levin College of Law.[5] We thank the students, staff, and faculty of the College of Law for their hospitality during our visit.

Because section 5904(c)(1) as it existed at the time of the December 2019 rating decision granting the veteran's CUE motion (and today) does not condition the eligibility for entitlement to attorney or agent fees on the filing of an NOD at any time, we hold that VA's implementing regulation, §14.636(c)(2)(ii), that includes such a requirement is invalid. Under the statute, an agent (or attorney) is eligible for a fee once "notice of the [AOJ's] initial decision under section 5104 of this title with respect to the case" has been issued.[6] Requiring more than what Congress put into place is unlawful. Therefore, we will invalidate §14.636(c)(2)(ii) and reverse the August 24, 2021, Board decision that relied on that regulation to deny appellant agent fees as a matter of law. We will then remand this matter for the Board to consider whether, with the regulation removed from the equation, appellant is entitled to a fee, including based on the Secretary's late-raised argument concerning the terms of the fee agreement between appellant and the veteran.

## I. BACKGROUND

The veteran served on active duty in the United States Army from June 1984 to August 1984, November 1990 to June 1991, and June 2004 to June 2007.[7] In December 2016, the veteran filed a request for a temporary total disability rating (100%) for his service-connected PTSD. At the time of his request, the veteran was in receipt of disability benefits for PTSD rated at 70%, effective August 2010.[8] In February 2017, the RO granted the veteran's request for a temporary

---

[4] Pub. L. No. 115-55, 131 Stat. 1105 (2017) (codified in various sections of title 38, U.S. Code).

[5] Oral Argument (OA), *Held v. McDonough*, U.S. Vet. App. No. 21-8048 (oral argument held Oct. 5, 2023), https://www.youtube.com/watch?v=81c4iWG4zeg.

[6] 38 U.S.C. § 5904(c)(1).

[7] Record (R.) at 4 (Aug. 2021 Board decision).

[8] R. at 2919 (Feb. 2017 rating code summary).

total disability rating based on a period of hospitalization.[9] The RO also stated (erroneously as it turns out) that following the temporary total disability rating, the veteran would revert to his "prior evaluation of 50%."[10]

In August 2017, the veteran submitted correspondence to VA indicating that his PTSD rating was improperly reduced.[11] The following month, VA informed the veteran that it would not take further action unless he "1) filed . . . a VA Form 21-0958, NOD, to the February 2017 rating decision, 2) submitted or identified new evidence related to the previously denied issue, or 3) identified CUE in the February 2017 rating decision."[12]

In March 2018, the veteran appointed appellant to represent him in proceedings before VA and submitted a fee agreement providing for a 20% contingency fee for appellant's representation leading to an award of past-due benefits.[13] The Board found this fee agreement "to be valid, as it was properly filed with VA and contains all required information in accordance with 38 C.F.R. § 14.636(g)."[14] In September 2018, the veteran, through appellant, moved to revise the February 2017 RO decision based on CUE. The veteran argued that the RO erroneously reduced his disability rating for PTSD from 70% to 50% after his temporary total disability rating had expired.[15]

In February 2019, while the veteran's CUE motion was pending, VA implemented the AMA, the new, modernized appeal system that Congress had created. In December 2019, the RO granted the veteran's CUE motion, acknowledging that the veteran was entitled to, and should have received, a 70% disability rating for PTSD after his temporary total disability rating expired.[16]

---

[9] R. at 2922-24 (Feb. 2017 RO decision).

[10] *Id.* at 2923.

[11] R. at 6 (Aug. 2021 Board decision).

[12] *Id.* The August 2017 correspondence and September 2017 VA letter in response are not included in the record of proceedings before the Court. However, neither party disputes the content of these communications.

[13] *See* R. at 2854.

[14] R. at 6. This is a favorable finding that the Court lacks jurisdiction to review. *See Medrano v. Nicholson,* 21 Vet.App. 165, 170 (2007*), aff'd in part, dismissed in part sub nom. Medrano v. Shinseki*, 332 F. App'x 625 (Fed. Cir. 2009).

[15] R. at 2818 (Sept. 2018 CUE motion).

[16] R. at 1186 (Dec. 2019 RO decision). The veteran's disability rating was reduced without affording him his due process right to contest the reduction. *Id.*; *see* 38 C.F.R § 3.105(e) (2017).

In April 2020, appellant sought entitlement to fees that he had earned by representing the veteran throughout the successful CUE motion proceedings.[17] In March 2021, the RO denied appellant's fee request, stating that "[b]efore February 2019 fees were only payable for representation after a notice of [sic] NOD was filed with respect to a decision."[18] The RO stated that, because the February 2017 RO decision was not the subject of an appeal before the veteran made his September 2018 CUE motion, "this award warrants no direct payment of fees."[19] Appellant appealed the VA's denial of fees to the Board, contending that he was eligible to receive fees for work that resulted in the favorable December 2019 RO decision.

In the August 2021 decision on appeal, the Board continued to deny appellant fees. While the Board cited section 5904, it did not address the language Congress used in that statute. Instead, the Board relied on VA's regulation dealing with fees associated with CUE motions when the decision being challenged in such a motion had been issued before the AMA became effective. The Board explained that this regulation, § 14.636(c)(2)(ii), required that, to earn a fee when CUE is found in a pre-AMA RO decision, a qualifying NOD must have been filed on or after June 20, 2007. The Board concluded that "[a]s no NOD had been filed, the appellant is not entitled to fees for his representation with respect to the request for a revision of the February 2017 rating decision[,] . . . there is no legal basis to grant the claim under . . . § 14.636(c)(2)(ii)."[20] Appellant appealed that decision to the Court, leading to today's decision.

## II. ANALYSIS

A. <u>Section 5904(c)(1)'s plain language allows fees in the situation before the Court.</u>

There is no dispute that at the time VA granted the veteran's CUE motion in December 2019, section 5904(c)(1) provided as follows as relevant to this appeal:

> A fee may not be charged, allowed, or paid for services of agents and attorneys with respect to services provided before the date on which a

---

[17] R. at 1153-54 (Apr. 2020 fee request).

[18] R. at 564 (Mar. 2021 VA summary of the case).

[19] R. at 565.

[20] R. at 7-8.

claimant is provided notice of the agency of original jurisdiction's initial decision under section 5140 of this title with respect to the case.[21]

Our role when interpreting a statute is well settled. "We look to the plain meaning of the statute, and when we find the plain meaning, our job is simply to apply it."[22] Here, Congress provided that a fee was permissible after VA provided notice under section 5104 of the "initial decision . . . with respect to the case."[23] Congress imposed no other requirements with respect to an agent or attorney charging a fee.

When we consider this plain and unambiguous statutory language in conjunction with the undisputed facts, the answer to the legal question before us is clear. Both parties agree that the "case" for which fees are at issue is the veteran's claim concerning his disability rating for PTSD.[24] Next, both parties agree that the "initial decision" with respect to that case is the February 2017 rating decision.[25] And there is no dispute that VA provided the veteran notice of the February 2017 rating decision under section 5104.[26] There simply is no doubt that appellant is entitled to a fee as far as the statute goes.

B. <u>38 C.F.R. § 14.636(c)(2)(ii) is inconsistent with section 5904(c)(1).</u>

Despite the plain language of section 5904(c)(1), the Board relied on § 14.636(c)(2)(ii) to deny appellant's claim for agent fees.[27] The Board had no discretion about whether to apply that regulation because Board members are required to apply the regulations set forth in title 38 of the Code of Federal Regulations.[28] Section 14.636(c)(2)(ii) provides:

> Agents and attorneys may charge fees for representation provided with respect to a request for revision of a decision of an agency of original jurisdiction under 38 U.S.C. § 5109A or the Board of Veteran's Appeals under 38 U.S.C. § 7111 based on clear and unmistakable error if notice of

---

[21] 38 U.S.C. § 5904(c)(1) (2019).

[22] *Frantzis v. McDonough*, 35 Vet.App. 354, 360-61 (2022); *see Kisor v. Wilkie*, 139 S. Ct. 2400, 2415 (2019); *Artis v. District of Columbia*, 583 U.S. 71, 83 (2018); *Chevron U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984); *Frederick v. Shinseki*, 684 F.3d 1263, 1269 (Fed. Cir. 2012).

[23] 38 U.S.C. § 5904(c)(1).

[24] OA at 16:00-:26, 50:48-:58, 57:35-58:15.

[25] OA at 16:00-:26, 30:05-:35, 50:48-:58.

[26] OA at 12:54-13:20. In his brief, the Secretary cites VA's letter/decision notifying the veteran of the February 2017 RO decision. Secretary's Brief (Br.) at 2 (citing R. at 2900).

[27] R. at 7-8.

[28] 38 C.F.R. § 20.105.

6

the challenged decision was issued before the effective date of the modernized review system as provided in § 19.2(a); a[n NOD] was filed with respect to the challenged decision on or after June 20, 2007; and the agent or attorney has complied with the power of attorney requirements in § 14.631 and the fee agreement requirements in paragraph (g) of this section.[29]

If this regulation is valid, we must affirm the Board's decision. But it's not.

On its face, § 14.636(c)(2)(ii) limits paid representation to those cases in which "a[n NOD] was filed with respect to the challenged decision on or after June 20, 2007[.]"[30] Simply stating the obvious, § 14.636(c)(2)(ii) requires more than Congress required in section 5904(c)(1) concerning when an agent or attorney may charge a fee. It is clear that section 5904(c)(1) only restricts an attorney or agent's ability to obtain fees for work performed "before the date on which a claimant is provided notice of the agency of original jurisdiction's initial decision under section 5104 of this title with respect to the case." We repeat: When the words of a statute are clear, that is the end of our inquiry.[31] Because section 5904(c)(1) as it existed at the time of the December 2019 rating decision granting the veteran's CUE motion does not restrict the ability of an attorney or agent to charge fees based on the filing of an NOD, VA's regulation § 14.636(c)(2)(ii) containing that restriction is in conflict with the text of the statute.[32] We have the authority to "hold unlawful and set aside" regulations that are "in excess of statutory jurisdiction, authority, or limitations" to the extent such action is necessary to decide a given case.[33] We will exercise that authority today. We hold that § 14.636(c)(2)(ii) is invalid because it is inconsistent with section 5904(c)(1).[34]

---

[29] 38 C.F.R. § 14.636(c)(2)(ii).

[30] *Id.*

[31] *See Frantzis*, 35 Vet.App. at 360-61; *see Kisor*, 139 S. Ct. at 2415; *Artis*, 583 U.S. at 83; *Chevron*, 467 U.S. at 842-43; *Frederick*, 684 F.3d at 1269.

[32] *Bates v. United States*, 522 U.S. 23, 29 (1997) ("[W]e ordinarily resist reading words or elements into a statute that do not appear on its face.").

[33] 38 U.S.C. § 7261(a)(3)(C).

[34] *See, e.g,. Spicer v. McDonough*, 61 F.4th 1360, 1366 (Fed. Cir. 2023) (striking down a VA regulation as unlawful when it was inconsistent with a statute Congress had enacted); *Terry v. McDonough*, __ Vet.App. __, __, 2023 U.S. App. Vet. Claims LEXIS 1620, at *26 (Oct. 19, 2023) (same); *Crumlich v. Wilkie*, 31 Vet.App. 194, 203-04 (2019) (same); *Staab v. McDonald*, 28 Vet.App. 50, 55 (2016) (same).

The plain language of section 5904(c)(1) as of the December 2019 decision is enough to decide this case. However, caselaw concerning the award of agent and attorney fees over the years underscores our holding.

Congress has long recognized the importance of a VA claimant's ability to retain paid representation for assistance with VA benefits claims. In fact, "Congress has thrice changed the triggering event for when attorneys' fees may be charged, each time shifting the entry point for such fees—and thus a claimant's ability to retain paid representation—earlier in the administrative appeals process."[35] Congress sets forth its fee regulations in section 5904(c)(1).[36]

In 1988, when section 5904(c)(1) was first enacted, attorneys could only charge fees for work performed after the Board made "a final decision in the case."[37] Then, in 2006, Congress amended section 5904(c)(1) to allow attorneys to charge fees for work performed after an NOD "is filed with respect to the case."[38] And in 2019, when the AMA took effect,[39] Congress amended its fee statute to state the language we have before us today:

> A fee may not be charged, allowed, or paid for services of agents and attorneys with respect to services provided before the date on which a claimant is provided notice of the agency of original jurisdiction's initial decision under section 5140 of this title with respect to the case.[40]

The Federal Circuit explained that the latest amendment "was part of a continuing congressional effort to enlarge the scope of activities for which attorneys can receive compensation for assisting veterans."[41] Although the language in section 5904(c)(1) is unambiguous, we will

---

[35] *Mil.-Veterans Advoc. Inc. v. Sec'y of Veterans Affairs* (*MVA*), 7 F.4th 1110, 1135 (Fed. Cir. 2021) (providing a thorough review of the statutory history since 1864, when attorneys were first allowed to charge fees for their work on VA benefits claims).

[36] Formerly 38 U.S.C. §3404(c)(1).

[37] 38 U.S.C. § 3404(c)(1) (1988).

[38] 38 U.S.C. § 5904(c)(1) (2006).

[39] AMA, Pub. L. No. 115-55 sec. 2(x) (the AMA "shall apply to all claims for which notice of a decision under section 5104 of title 38, United States Code, is provided by the Secretary of Veterans Affairs," on or after February 19, 2019, the effective date of the AMA).

[40] 38 U.S.C. § 5904(c)(1) (2019).

[41] *MVA*, 7 F.4th at 1136.

review the Federal Circuit's consideration of these fee statutes because that consideration underscores our conclusion in this appeal.

In 2002, the Federal Circuit interpreted the language from the 1988 version of section 5904(c)(1) in *Stanley v. Principi*.[42] In *Stanley*, an attorney was seeking fees for work performed in a veteran's case that led to a successful motion to reopen a previous unappealed adverse decision. At the time *Stanley* was decided, an attorney could not charge a fee until the Board had issued a final decision. Because the Board had issued the decision that reopened the veteran's claim, the primary issue in *Stanley* was whether that decision to reopen constituted a final decision for fee purposes.

*Stanley* is important for this appeal because it held that section 5904(c)(1) "was designed to allow attorneys' fees, after the initial claims proceeding, in connection with proceedings to reopen a claim [based on] . . . clear and unmistakable error."[43] The Federal Circuit explained that "VA clearly concluded that the definition of a final decision on an issue must be liberal enough to allow attorneys' fees in reopening proceedings."[44] The court concluded that a Board decision reopening a claim constituted a final decision for the purposes of entitlement to obtaining fees.[45] While certainly not dispositive, *Stanley* supports appellant's position that he is entitled to fees for work performed in the connection with the veteran's CUE motion because, despite interpreting a more restrictive version of section 5904(c)(1) then in place, the Federal Circuit made clear that an attorney (or agent) can get paid for work performed on a claim to reopen an earlier final decision based on CUE.

In 2006, the Federal Circuit decided *Carpenter v. Nicholson*.[46] In *Carpenter*, the Federal Circuit also considered the issue of entitlement to attorney fees where an attorney represented a veteran who sought to revise a prior final decision based on CUE. *Carpenter* was primarily about how a "case" was defined under an earlier version of section 5904(c)(1). The Federal Circuit reaffirmed the interpretation of section 5904(c)(1) set forth in *Stanley*, holding that "a veteran's

---

[42] 283 F.3d 1350 (Fed. Cir. 2002).

[43] *Id.* at 1358.

[44] *Id.*

[45] *Id.* at 1358-59.

[46] 452 F.3d 1379, 1383 (Fed. Cir. 2006).

claim based on the specified disability does not become a different 'case' at each stage of the often lengthy and complex proceedings, including remands as well as reopenings as in *Stanley*."[47] Particularly, the Federal Circuit emphasized that "the reopening of a claim . . . [based on CUE] is within the statutory entitlement to attorney fees."[48]

*Carpenter* also supports appellant's position because it underscores that the December 2019 decision granting the veteran's CUE motion in our appeal was part of the same "case" as the initial decision in February 2017. And, as we have discussed, the version of section 5904(c)(1) that was in effect when VA issued the December 2019 decision granting the veteran's CUE motion allowed for an agent and an attorney to obtain a fee in that situation so long as notice under section 5014 had been provided, as it was here in connection with the 2017 initial decision in the "case."

But even more telling than these decisions concerning earlier versions of section 5904 is the Federal Circuit's 2021 decision in *MVA*. In that case, the Federal Circuit addressed challenges under the Administrative Procedure Act to several regulations VA had adopted to implement the AMA. One such challenge concerned 38 C.F.R. § 14.636(c)(1)(i) dealing with the allowance of fees to attorneys and agents for work performed at the AOJ with respect to supplemental claims.[49] VA's regulation provided that an attorney or agent could not charge a fee for a supplemental claim that was filed *more than* 1 year after the "initial decision" in a "case" even though fees were available in connection with a supplement claim filed *within* 1 year of such an "initial decision."[50] The Federal Circuit invalidated that regulation, a companion to the one before us, holding that "§ 14.636(c)(1)(i) is contrary with [sic] the plain and ordinary meaning of [section] 5904(c)(1)[,]" because it distinguished between two types of supplemental claims, allowing fees to be charged for one but not the other.[51] The Federal Circuit explained that section 5904(c)(1) unambiguously

---

[47] *Id.* at 1384.

[48] *Id.* at 1379.

[49] *MVA*, 7 F.4th at 1135-41. A "supplemental claim" is "a claim for benefits under laws administered by the Secretary filed by a claimant who had previously filed a claim for the same or similar benefits on the same or similar basis." 38 U.S.C. § 101(36).

[50] *MVA*, 7 4th at 1137.

[51] *Id.* at 1141. In its decision on appeal, the Board also concluded that appellant was not entitled to past-due benefits under § 14.636(c)(1)(i), which, as we have explained, was invalidated per *MVA*. The Board's reliance on the invalid § 14.636(c)(1)(i) as additional support to deny appellant fees does not undercut our statutory analysis that invalidates § 14.636 (c)(2)(ii), the Board's primary reason for denying appellant fees in this appeal. Indeed, the Federal Circuit in *MVA* invalidated § 14.636(c)(1)(i) using the same support and similar analysis that we use today to invalidate

10

permits paid representation for "all forms of administrative review under the AMA."[52] The Federal Circuit explained that section 5904(c)(1) contained no limitation on representatives' fees other than requiring "notice of the . . . initial decision . . . with respect to the case."[53] Of course, that is precisely the point we have made about the Secretary's regulation concerning fees related to CUE motions addressing initial decisions before the AMA became effective. Further, the Federal Circuit reinforced its decisions in *Stanley* and *Carpenter*, holding that "we have never denied attorneys' fees for work performed on reopening proceedings . . . § 5904(c)(1) plainly permits paid representation for all forms of administrative review after the AOJ's initial decision on the original claim for benefits."[54] There is no more justification for VA adding requirements to section 5904(c)(1) for CUE motions than there was for such an action with respect to supplemental claims.

It is clear that navigating the VA benefits system can be a complicated endeavor. And there is no question that it is particularly difficult to overcome a final unappealed decision. The evolution of section 5904 reflects congressional recognition of the importance of allowing veterans to obtain representation and for their representatives to charge fees, including in the context of reopening matters, especially those involving CUE motions. Further, the caselaw makes clear that limiting fees for work performed by representatives in CUE matters to only those cases in which an NOD had been filed on or before June 2007 would preclude payment of fees in most CUE cases—an outcome the Secretary acknowledged during oral argument.[55] There is no doubt that this would be detrimental to veterans because it would deter representatives from taking cases involving CUE motions. Indeed, in many cases involving CUE, an NOD would not have been filed because the "sole purpose of a CUE [motion] is to provide a VA claimant with an opportunity to challenge a decision that is otherwise final and unappealable."[56]

---

§14.636 (c)(2)(ii).

[52] *Id.* at 1138.

[53] *Id.*

[54] *Id.* We note that the Federal Circuit also rejected VA's argument that the court should assume that Congress implicitly adopted VA's longstanding practices under the legacy system when it enacted the AMA. The court stated that "it [is] unlikely that Congress intended to preserve the VA's 'longstanding interpretation' of the fee statutory provision from the superseded legacy system, especially where the regulation at issue contradicts both the plain and ordinary meaning of the statutory provision and the statutory history." *Id.* at 1140.

[55] OA at 46:30-55:46.

[56] *See May v. Nicholson*, 19 Vet.App. 310, 317 (2005) (emphasis omitted), *aff'd*, 208 F. App'x 924 (Fed. Cir. 2006).

During oral argument, the Secretary asserted that there was no need for representation in this matter because the error VA made in the February 2017 decision was easily corrected when brought to the Agency's attention.[57] However, the record clearly refutes the Secretary's assertion. The record shows that the veteran attempted to correct the issue on his own before obtaining representation, but he was unsuccessful in his self-represented attempt to have VA fix its obvious mistake.[58] So, if anything, this series of events underscores the importance of representation by an agent or attorney.

D. The Secretary's arguments defending § 14.636(c)(2)(ii) are unpersuasive.

We have just explained that (1) section 5904(c)(1) is unambiguous and plainly allows a fee in the situation before the Court and (2) §14.636(c)(2)(ii) is inconsistent with the statute because it requires that an agent or attorney do more than Congress required in order to charge a fee. Our reasoning is straightforward. The statute in place at the time of the December 2019 rating decision granting the veteran's CUE motion unquestionably allowed an agent or attorney to charge a fee. And the law does not allow an Agency to preempt Congress via a regulation.

The Secretary mounts a defense of the regulation on which the Board relied that injects needless complexity into what is, in reality, a straightforward matter. In a nutshell, the Secretary argues that we should reject appellant's argument that § 14.636(c)(2)(ii) is invalid because the regulation is consistent with the legacy fee statute that was in place before the AMA took effect. The Secretary explains that the AMA applies only to claims in which VA issues a decision on or after February 19, 2019, but here the initial decision was issued in February 2017 and so, he reasons, the legacy fee statute applies even though the December 2019 decision granting the CUE motion was governed by the AMA.[59] And, the Secretary continues, under the legacy version of section 5904(a)(1), fees were only permitted for work performed after a claimant filed an NOD.[60] To reiterate, the Secretary contends that the relevant statute for determining fees for appellant's representation of the veteran in connection with a CUE motion was *not* the one in force in

---

[57] *See* OA at 42:40-46:30.

[58] R. at 6 (Board discusses veteran's unsuccessful attempts to have VA correct its error).

[59] Secretary's Br. at 6.

[60] *Id.* at 7 (citing 38 U.S.C. § 5904(c)(1) (2018)).

December 2019 when VA granted the motion but rather the one that had been in place in February 2017. We find the Secretary's argument unpersuasive.

We begin with the legacy/AMA divide because that is a critical part of the Secretary's argument. Congress provided that the AMA "shall apply to all claims for which notice of a decision under section 5104 of title 38, United States Code, is provided by the Secretary of Veterans Affairs," on or after February 19, 2019.[61] In particular, the AMA applies to all "claims, requests for reopening of finally adjudicated claims, and requests for revision based on [CUE] for which VA issued notice of an initial decision on or after [February 19, 2019]."[62] There is no question then that the AMA (including the version of section 5904(c)(1) without reference to an NOD) applied at the time of the December 2019 rating decision granting the veteran's CUE motion.[63]

We pause for a moment to make an important point about terminology. The phrase "initial decision" contained in § 19.2 refers to something different from the phrase "initial decision . . . with respect to the case" contained in section 5904(c)(1). An "initial decision" under § 19.2 refers to the decision that triggers the application of the AMA, whereas the "initial decision . . . with respect to the case" under section 5904(c)(1) refers to the decision that triggers an agent's (or attorney's) ability to charge fees for representation of a claimant. No one contests—indeed, it is difficult to see how one could contest—that the December 2019 decision is an "initial decision" under § 19.2; it is the decision in which the RO found CUE in its February 2017 rating decision. To state the obvious, the December 2019 decision was issued after the effective date of the AMA and the Board itself concedes as much.[64] Therefore, the AMA governs the matter that is before us today because the "initial decision" for that purpose is the December 2019 decision granting the veteran's CUE motion.[65] But that point should not obscure that the real work in terms of the appropriateness of the fees at issue is done by the phrase "initial decision . . . with respect to the case" in section 5904 that we have spent so much time discussing.

---

[61] Pub. L. No. 115-55 sec. 2(x).

[62] 38 C.F.R § 19.2(a)-(b) (2023); 38 C.F.R. § 3.2400(a)(1) (2022); *see also Mattox v. McDonough*, 34 Vet.App. 61, 69 (2021), *aff'd*, 56 F.4th 1369 (Fed. Cir. 2023).

[63] *See Mattox*, 34 Vet.App. at 69.

[64] R. at 8.

[65] *Mattox*, 34 Vet.App. at 69.

In his briefing, the Secretary contends that the AMA version of section 5904(c)(1) that was unquestionably in force at the time of the December 2019 decision granting the veteran's CUE motion is not applicable by relying on *Perciavalle v. McDonough*.[66] However, his reliance on *Perciavalle* is misplaced. In that case, there was no issue about whether the AMA should apply—the matter before the Court was strictly a legacy case.[67] The Secretary cites to a footnote that he asserts supports his position.[68] The problem is that the footnote he references simply indicates that the AMA had been signed into law in 2017, but at the time of the March 2018 Board decision on appeal in that case, the AMA had not yet gone into effect so it was not applicable to the case.[69] It was merely an informative footnote—not some sort of broad holding as the Secretary suggests.

During oral argument, the Secretary also asserted that the Court's decision in *Mattox v. McDonough* supported his position.[70] Once again, we disagree with the Secretary. In *Mattox*, the veteran was denied service connection in a *pre-AMA* decision and he filed a timely *pre-AMA* NOD with that *pre-AMA* decision.[71] Thereafter, VA issued a *pre-AMA* Statement of the Case, and appellant perfected his appeal to the Board by filing a *pre-AMA* Substantive Appeal.[72] All of these events occurred before the effective date of the AMA and appellant in *Mattox* did not opt into the AMA at any point. The only thing in *Mattox* that took place after the effective date of the AMA was that the Board issued a decision on the veteran's *legacy* claim that had proceeded in the *legacy* system.[73] Given all this, it is not the least bit surprising that the Court found it to be obvious that "the initial decision that led to appellant's administrative appeal" was the *pre-AMA* rating decision that denied service connection for an acquired psychiatric disorder.[74] We face an entirely different situation. Most importantly, the December 2019 rating decision that granted the veteran's CUE

---

[66] *See* Secretary's Br. at 12 (citing *Perciavalle v. McDonough*, 32 Vet.App.117, 120 n.4 (2019), *aff'd*, 847 F. App'x 914 (Fed. Cir. 2021)).

[67] *Perciavalle*, 32 Vet.App. at 118-20.

[68] *See* Secretary's Br. at 12.

[69] *Id.* at 120 n.4.

[70] OA at 52:00-:51 (referencing *Mattox*, 34 Vet.App. at 69).

[71] *Mattox*, 34 Vet.App. at 64.

[72] *Id.*

[73] *Id*. at 64-65.

[74] *Id.*

14

motion was issued under the auspices of the AMA. And the statute providing for the award of fees for AMA decisions is the version of section 5904(c)(1) that does not refer to an NOD. It is true that the "initial decision . . . with respect to the case" was a pre-AMA February 2017 rating decision, but that fact does not matter under the language Congress used in the version of section 5904(c)(1) in effect when the CUE motion was granted. And, as we've mentioned several times, the parties agree that the "initial decision . . . with respect to the case" was the February 2017 rating decision for which VA provided section 5104 notice.[75] To reiterate, that is all the statute requires to make a fee allowable.

The bottom line is clear. There simply is nothing to support the Secretary's assertion that we are at liberty to apply the pre-AMA version of section 5904(c)(1) to the award of past-due benefits in the December 2019 AMA decision.

### E. A final matter: We will remand for the Board to consider the potential import of the veteran's fee agreement with appellant.

During oral argument, the Secretary argued for the first time that appellant may not be entitled to a fee in this case based on the terms of the fee agreement itself. Specifically, the Secretary contended that the fee agreement included language making the receipt of fees contingent on an NOD being filed on or after June 19, 2007.[76] In other words, the Secretary posited that, regardless of whether the pre-AMA version of section 5904(c)(1) applied in this case as a matter of law, as a matter of contract the same outcome would result. The Secretary also stated that if the Court agreed with appellant on the law in this matter, remand was appropriate for the Board to consider the matter. Appellant urged the Court to refrain from considering the Secretary's late-raised argument and insisted that any questions concerning the content of the fee agreement involve factual determinations that should be decided by the Board in the first instance.[77]

The first issue we must resolve concerning the Secretary's contract-based argument is whether it has some impact on our jurisdiction to address the validity of § 14.636(c)(2)(ii). We have adopted the case and controversy requirements of Article III of the Constitution.[78] So, we

---

[75] OA at 16:00-:26, 30:05-:35, 50:48-:58.

[76] OA at 1:01:46-:02:46 (referencing R. at 2854 (Mar. 2018 fee agreement)).

[77] OA at 1:03:20-:07:34 (referencing *Tadlock v. McDonough*, 5 F.4th 1327, 1333-34 (Fed. Cir. 2021)).

[78] *See Kernz v. McDonough*, __ Vet. App. __, __, No. 20-2365, 2023 U.S. App. Vet. Claims LEXIS 1575, at *18 (Oct. 4, 2023) (en banc); *Mokal v. Derwinski*, 1 Vet.App. 12, 15 (1990).

need to ensure that we would not be rendering an advisory opinion about § 14.636(c)(2)(ii) given the contract-based argument.[79]

We conclude that the contract-based argument does not undermine our jurisdiction to address the validity of § 14.636(c)(2)(ii). Our job is to review final Board decisions.[80] Not only did the Board effectively limit its consideration of appellant's fee request to § 14.636(c)(2)(ii), it had no choice to do otherwise. VA regulations provide that the Board is "bound by . . . regulations of the Department of Veterans Affairs."[81] So, the Board has never had a meaningful opportunity to consider the contract-based argument because, as a practical matter, it couldn't venture beyond the terms of § 14.636(c)(2)(ii). Under these circumstances, addressing the validity of § 14.636(c)(2)(ii) is not advisory because either that regulation is unlawful (as we hold) and VA can move forward to address the contract-based argument or it is lawful and there is no need to delve into those largely unchartered waters.

But the mere fact that the contract-based argument does not deprive us of jurisdiction to address the validity of § 14.636(c)(2)(ii) says nothing about whether we should address the contract-based argument in this appeal. We decline to do so. First, this Court discourages, and generally will not consider, arguments raised by counsel at oral argument for the first time.[82] Second, as we've noted, until now the Board was bound by § 14.636(c)(2)(ii). So, the Board made no findings concerning whether fees would be precluded based on the content of the fee agreement itself.[83] Third, and relatedly, questions about the extent to which VA wishes to police contracts through its direct fee authority are ones the Agency should consider in the first instance. And finally, we believe it is best to allow the Board to consider how, if it all, its determination that the fee agreement at issue in this case is "valid" affects the Secretary's contract-based argument.[84]

Because the Board relied on an invalid regulation to review the eligibility of appellant to collect fees *and* made no factual or legal determinations in the first instance about whether

---

[79] *See Norvell v. Peake*, 22 Vet.App. 194, 201 (2008); *Waterhouse v. Principi*, 3 Vet.App. 473, 474 (1992).

[80] *See* 38 U.S.C. §§ 7252(a), 7266(a).

[81] 38 C.F.R. § 20.105.

[82] *Ray v. Wilkie*, 31 Vet.App. 58, 69 (2019); *Overton v. Wilkie*, 30 Vet.App. 257, 265 (2018).

[83] *See Viterna v. McDonough*, 65 F.4th 1378,1382 (Fed. Cir. 2023) (the Board is authorized to review the terms of a fee agreement).

[84] *See* R. at 8.

appellant is entitled to fees under the contract itself, or even if the fees requested are reasonable,[85] the prudent course of action is for the Court to remand this matter for the Board to consider these issues in the first instance should it consider that to be necessary.[86]

### III. CONCLUSION

In sum, 38 C.F.R. § 14.636(c)(2)(ii) is invalid because it contravenes the plain and ordinary meaning of 38 U.S.C. § 5904(c)(1), which permits paid representation once a claimant receives notice of the AOJ's "initial decision . . . with respect to the case." Because the Board relied on the invalid regulation in reaching its August 2021 decision, we REVERSE its decision that appellant is not entitled to a fee under the terms of the regulation that purports to implement section 5904(c)(1). We REMAND this matter for the Board to address appellant's fee request anew, including under the terms of the fee agreement itself as appropriate, without regard to the now-invalidated § 14.636(c)(2)(ii).

---

[85] We note that VA's Office of the General Counsel has exclusive jurisdiction to review a fee agreement's reasonableness in the first instance. 38 U.S.C. § 5904; 38 C.F.R. § 14.636(i) (2023).

[86] *Tadlock*, 5 F.4th at 1337-38.